IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| AgSouth Farm Credit, ACA, )<br>)<br>            Appellant, )<br>)<br>v. )<br>)<br>Craig Lewis Bishop, )<br>)<br>            Appellee. )<br>)<br>In re: Craig Lewis Bishop, )<br>Chapter 12 No. 04-14378-jw )<br>)<br>            Debtor. )<br>_____) | C.A. No. 2:05-cv-01982-PMD<br><br>**ORDER** |

      This matter is before the court upon Appellee Craig Lewis Bishop's ("Bishop") Motion to Dismiss Appellant AgSouth Farm Credit, ACA's ("AgSouth") Bankruptcy Appeal. For the reasons set forth herein, this court grants Bishop's Motion to Dismiss AgSouth's Bankruptcy Appeal as untimely filed.

**BACKGROUND**

      Bishop filed for relief under Chapter 12 of the United States Bankruptcy Code on December 3, 2004, in the United States Bankruptcy Court for the District of South Carolina. Bishop is the record owner of 33.71 acres located in Dorchester County, South Carolina ("the property").

      AgSouth is the successor in interest to Edisto Farm Credit. On October 1, 1997, Edisto Farm Credit recorded a mortgage on the property; this debt was $176,689.30 as of December 3, 2004. On May 2, 2002, the United States Department of Agriculture, acting through the Farm Service Agency ("FSA"), recorded a mortgage on the property; this debt was $113,527.52 as of December 3, 2004. The FSA mortgage is junior to and subsequent in priority to the AgSouth mortgage.

Bishop filed a motion in the Bankruptcy Court under 11 U.S.C. § 506 to establish the value of AgSouth's claim secured by the property, and AgSouth objected to the motion. On March 22, 2005, the Bankruptcy Court conducted a hearing, and on May 24, 2005, the Bankruptcy Court filed and entered its Order setting the value of the secured claim of AgSouth at $77,500.00.

AgSouth decided to appeal the Bankruptcy Court's Order, and on June 1, 2005, AgSouth's attorney mailed a Notice of Appeal to the former mailing address of the Bankruptcy Court at Post Office Box 1448, Columbia, South Carolina. The Bankruptcy Court had not used this mailing address since April of 2005.[1] On Friday, June 3, 2005, the last day for timely filing a Notice of Appeal, the Assistant United States Attorney representing FSA contacted a Courtroom Deputy Clerk at the Bankruptcy Court and inquired as to whether the Bankruptcy Court had received the Notice of Appeal. Upon learning that AgSouth's attorney had used an incorrect address, the Clerk's Office contacted AgSouth's attorney to inquire about the filing of the Notice of Appeal. After discussing the matter, the Chief Deputy Clerk accepted the filing of the Notice of Appeal via facsimile and directed that it be docketed with a file date of June 3, 2005.[2] Based on his telephone conversation

---

[1] Bishop's Motion to Dismiss states that notice of the change in address "was posted on the Bankruptcy Court's Web Page, outside all Courtrooms, and in the Clerk's Office public areas. Notice was transmitted electronically to all CM/ECF participants." (Mot. to Dismiss at 2.) In contrast, Appellant claims:

> [C]ounsel for AgSouth mailed the Notice of Appeal to the Bankruptcy Court's post office box, the address in his records, and the address previously used for filing in this case without incident. This is also the address listed in both the South Carolina Bar Lawyers Desk Book and the South Carolina Legal Directory for 2005.

(Mem. in Opp. to Mot. to Dismiss at 2-3.)

[2] According to AgSouth's Memorandum in Opposition to Bishop's Motion to Dismiss, "The Clerk's office advised Mr. Jones that there had been similar problems in connection with the change in the Clerk's address, and that if a copy of the Notice was faxed to the Clerk's office, it would be

2

with the Clerk's Office, AgSouth's attorney "determined that it was no longer necessary to transport a duplicate original to Columbia, nor was it necessary to seek an enlargement of time to file the Notice of Appeal." (Mem. in Opp. to Mot. to Dismiss at 3.) The Bankruptcy Court received the originally mailed Notice of Appeal on June 15, 2005. On June 17, 2005, the Bankruptcy Court ordered "that the original correspondence and Notice of Appeal be treated as filed on June 15, 2005 and docketed accordingly and *not substituted* for the telefaxed copy entered on the docket on June 3, 2005. The telefaxed filing shall also remain of record as docketed." (Judge Waites, June 17, 2005 Order.) (emphasis added). Accordingly, Bishop filed a Motion to Dismiss the Appeal on the grounds that AgSouth's attorney failed to timely file the Notice of Appeal.

## DISCUSSION

### A.     Timeliness of Appeal

The Federal Rules of Bankruptcy Procedure provide the rules for taking an appeal from a judgment, order, or decree of a bankruptcy judge. Specifically, Rule 8001(a) provides that an appeal "shall be taken by filing a notice of appeal with the clerk within the time allowed by Rule 8002." Fed. R. Bankr. P. 8001(a). In turn, Rule 8002 is entitled, "Time for Filing Notice of Appeal," and provides in pertinent part that the "notice of appeal *shall be filed* with the clerk within 10 days of the date of the entry of the judgment, order, or decree appealed from." Fed. R. Bankr. P. 8002(a) (emphasis added). "The 10-day period for filing a notice of appeal has been strictly construed, requiring strict compliance with its terms. More significantly, the 10-day deadline under Rule 8002(a) is jurisdictional in nature, so that a failure to timely file the notice of appeal deprives the

---

marked filed and upon receipt of the mailed original, it would be substituted for the faxed copy." (Mem. in Opp. to Mot. to Dismiss at 3.)

district court of jurisdiction to review a bankruptcy court's order."[3] *In re Hotel Syracuse*, 154 B.R. 13, 15 (N.D.N.Y. 1993) (citations omitted). In this case, there is no dispute that the 10-day period for filing the Notice of Appeal ended on June 3, 2005; however, AgSouth mailed its Notice of Appeal to an incorrect address, and after speaking with the clerk's office on June 3, 2005, attempted to file its Notice of Appeal by facsimile. The court must address the propriety of this facsimile filing under the circumstances.

Under Rule 5(e) of the Federal Rules of Civil Procedure, a filing by electronic means is allowed only if approved by local rule. *See* Fed. R. Civ. P. 5(e) ("A paper filed by electronic means in compliance with a local rule constitutes a written paper for the purpose of applying these rules."). As noted by Judge Waites in his Order dated June 29, 2005:

> Facsimile filings are not allowed by the United States Bankruptcy Court for the District of South Carolina except under the strictest of demonstrated circumstances. However, no Local Rule expressly references the allowance. As previously referenced, the Guidelines for the Filing of Documents (the "Guidelines") were implemented by Operating Order 04-11 on October 18, 2004. The twenty-three (23) page document governs the filing of all documents, including both electronically transmitted documents and paper filings (described as conventional filings). The Guidelines allow electronically transmitted filings under the Court's CM/ECF system and contemplate facsimile filings only in the event of a technological failure of the Court's CM/ECF system (not that of the filing party). Furthermore, the filing is subject to Court review of the circumstances of such an emergency filing, including whether the filing would be made untimely as a result of a technological failure of the Court's CM/ECF system.

(Judge Waites, June 29, 2005 Order.); *See also In re Hotel Syracuse*, 154 B.R. at 17 ("[U]ntil such time as the Northern District of New York sees fit to permit filing by facsimile, this method of

---

[3] Although this Court is deprived of appellate jurisdiction if AgSouth failed to timely file its Notice of Appeal; this Court does have jurisdiction to determine whether AgSouth timely filed as a threshold matter.

submission shall not constitute valid or timely filing of documents."). Accordingly, this court believes that AgSouth's filing of the Notice of Appeal by facsimile on June 3, 2005, does not constitute a timely and properly filed Notice of Appeal. In light of the foregoing, AgSouth seeks application of the "unique circumstances" doctrine to cure its failure to timely file.

### B.    The "Unique Circumstances" Doctrine

In *Thompson v. INS*, the petitioner filed an untimely motion for a new trial. 375 U.S. 384 (1964). Although this motion was filed untimely, the defendant did not object, and the district court specifically declared that it had been filed " 'in ample time.' " *Id*. at 385. In reliance on this statement, the petitioner did not file an appeal from the district court's original judgment and instead filed a timely appeal from the later denial of his motion for a new trial. *Id*. at 386-87. The Court of Appeals for the Seventh Circuit dismissed the appeal as untimely. *Id*. at 385. Due to the "unique circumstances," the Supreme Court reversed, finding that fairness required that the Court of Appeals excuse the untimely filing because the petitioner had relied on the specific statement of the District Court that his motion for a new trial was timely. *Id*. at 387.

In *Osterneck v. Ernst & Whinney*, the Supreme Court held that the "unique circumstances" exception from *Thompson* did not apply to excuse petitioners' failure to file an effective notice of appeal. 489 U.S. 169, 178-79 (1989). In so holding, the Supreme Court stated: "By its terms, *Thompson* applies only where a party has performed an act which, if properly done, would postpone the deadline for filing his appeal and has received specific assurance *by a judicial officer* that this act has been properly done." *Id*. at 179 (emphasis added); *see also Alston v. MCI Comms.*, 84 F.3d 705, 706-07 (4th Cir. 1996) (quoting the same).

First, in the case *sub judice*, the act upon which AgSouth relies is its facsimile filing of the

Notice of Appeal. However, as discussed above, this facsimile filing was not approved by local rule, and therefore, it seems that no act was performed, which if properly done would have postponed the deadline for appeal.

Second, "[w]ith one exception, every circuit to have considered the issue has found that the phrase 'judicial officer' in *Osterneck* refers only to judges. *Lawrence v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen, and Helpers of Am.*, 320 F.3d 590, 593 (6th Cir. 2003); *see, e.g., Rezzonico v. H&R Block, Inc.*, 182 F.3d 144, 151 (2d Cir. 1999) ("With regard to the oral communication with the clerk's office, such statements by a member of the clerk's office staff are not judicial assurances that qualify as unique circumstances. 'Judicial officer' means a judge or a member of a judge's staff empowered to speak in the judge's behalf."); *Moore v. South Carolina Labor Bd.*, 100 F.3d 162, 164 (D.C. Cir. 1996) ("This case does not qualify for application of the unique circumstances doctrine because although the statements made by the clerk's office staff may constitute specific assurances, they cannot fairly be characterized as official judicial action."); *United States v. Heller*, 957 F.2d 26, 31 (1 st Cir. 1992) ("We hold, therefore, that reliance on the advice, statements, or actions of court employees cannot trigger the [unique circumstances] doctrine, whether applicant is or is not pro se."); *Sonicraft, Inc. v. NLRB*, 814 F.2d 385, 387 (7th Cir. 1987) ("The rule of the *Thompson* case is limited to the situation where the district court (or, we suppose, other tribunal) assures a party that he has time to appeal, and the party relies and forgoes filing a timely appeal.").

In contrast to the weight of authority, the Eleventh Circuit has applied the unique circumstances doctrine where a litigant relied upon erroneous oral representations made by a district court clerk. *Willis v Newsome*, 747 F.2d 605, 606 (11th Cir. 1984); *see also Hollins v. Dep't of*

6

*Corr.*, 191 F.3d 1324, 1328 (11th Cir. 1999) ("[O]ur own Circuit has articulated a 'lenient formulation of the unique circumstances exception,' which provides that any 'judicial action' prior to the expiration of the relevant time period for appeal that could have 'lulled [the appellant] into inactivity' may permit our application of the doctrine.") (internal citations and some quotations omitted).

In the present case, AgSouth requests that this court follow the Eleventh Circuit's lenient formulation of the unique circumstances doctrine as applied in *Willis* and allow application of the doctrine when a litigant relies on assurances of court personnel which lull the attorney "into failing to arrange for an alternative method of filing or moving for an extension to file." *Willis*, 747 F.2d at 607. However, "[b]ecause the unique circumstances exception, as originally articulated by the Supreme Court and as applied in the majority of cases, turns on a party's reliance of a formal court order or ruling," this court respectfully declines to follow *Willis* and holds that the unique circumstances exception does not apply to oral assurances provided by clerk's office staff.[4] *Moore*, 100 F.3d at 164. Although this result inevitably produces a harsh result for AgSouth in this case, "[i]t is in the nature of jurisdictional limits on appeals that occasionally a meritorious appeal will be lost through inadvertence or from the would-be appellant's being misinformed." *Id.* Ultimately, because AgSouth failed to timely file its Notice of Appeal and because the unique circumstances doctrine does not apply to cure this jurisdictional defect, this court must dismiss, albeit reluctantly, AgSouth's appeal for lack of jurisdiction.

---

[4] "It makes sense, moreover, that application of the unique circumstances exception has by and large been limited to formal court action, as a formal order or ruling (1) generates the highest level of justifiable reliance, and (2) raises virtually no possibility of evidentiary problems for appellate courts faced with applying the exception." *Moore*, 100 F.3d at 164.

## **CONCLUSION**

It is, therefore, **ORDERED**, for the foregoing reasons that Bishop's Motion to Dismiss AgSouth's Bankruptcy Appeal is **GRANTED**.

**AND IT IS SO ORDERED**.

PATRICK MICHAEL DUFFY
United States District Judge

Charleston, South Carolina
November 17, 2005